We're ready to proceed. Good morning. Thank you, Judge Wilson. My name is Nate Kellum and I represent the appellant Rodney Keister. To hand out literature, hold up a sign, speak with people on municipal right-of-way sidewalks at the intersection of University Boulevard and Hackberry Lane in Tuscaloosa, Alabama. So that we're clear, Mr. Kellum, this is Keister versus Bell, right? Yes, your honor, it is. My apologies. You're Nathan Kellum and J. Michael Ezell is here for Bell. Yes, your honor. All right, you may proceed. For him to engage in these activities in this particular intersection at University Boulevard and Hackberry Lane, Mr. Keister has a requisite. He must first obtain a permit from the University of Alabama requiring him to find a student group willing to sponsor his speech and actively join in his speech. On top of this extraordinary requirement, Mr. Keister must also supply a 10-working-day advance notice of his speech just to ensure that he receives a permit. The burdens associated with this permit process are so onerous, they would be unconstitutional in any type of forum. The restrictions are especially egregious here because these venues are traditional public forum. Following the remand of the first appeal, didn't we hold on the previous appeal that it was a limited public forum? Honor, what you found on a limited record on dealing with a preliminary injunction that the district court did not err in reaching that conclusion? Well, what evidence has been submitted that had not been submitted on the preliminary injunction? It's quite extensive because we did extensive discovery, your honor, following that first remand. Of particular relevance, we discovered UA's aerial map. It's located on document 60-1, page 191 of the appendix. This map demonstrably illustrates the campus boundaries for UA. That's its whole purpose. It plainly shows the sidewalks at this intersection of University Boulevard and Hackberry Lane are outside the campus boundaries. How does it show that? I saw that, but I mean, how does it show that it's outside the boundaries? Well, if you notice, your honor, you see yellow lines overlapping the aerial map. You see those yellow lines, your honor? It's on page 191 of the appendix. I understand. And what those yellow lines represent is they represent campus boundaries. Says who? Says the map itself. If you look on the right of it, it says the legend. It says campus boundaries with a yellow line beside it. So this map shows that this intersection, particularly the northeast and southeast corner, that they are outside of the yellow lines. Hence, they are outside of the campus boundaries. And this is consistent, it's harmonious with the GIS map. And there's no question that the university still maintains those sidewalks, is there? There is no question, because that's pursuant to a license agreement that you have between the city of Tuscaloosa and the University of Alabama, where the city of Tuscaloosa asserts its control and ownership, but also it allows the university to maintain these sidewalks so that they can put in irrigation, they can do landscaping. And the building on the corner there is a university building, the Russell Building, right? There's no question it is. And I don't think there's any question that the lawn area in front of it is university property as well. But as far as the sidewalks themselves, what the proof before this court shows is that it is not. That is outside of campus boundaries. That is actually part of the city of Tuscaloosa. It doesn't really matter, though. I mean, it matters somewhat. But we all acknowledge that in order for it to be any type of forum where the First Amendment is going to govern, there's going to have to be some kind of governmental ownership over the property, right? So, I mean, it seems to me that whether it is technically considered university property or city property does not complete the analysis. Would you agree? I would not agree with that, Your Honor. Just to be clear, you think that the analysis begins and ends with whether the property is owned by the university? No. If it is owned by the city, it is. Not if it's owned by the university, because that's what the case law says. If you take a look at- Well, it's the same thing, right? I mean, it's a different answer. But if you think that the analysis begins and ends with whether the city owns the property, then you necessarily think it begins and ends with whether the university owns the property. What am I missing here? Well, I think what you're missing is probably the perspective from the cases from the Supreme Court, particularly United States v. Grace, a 1983 decision, and Frisbee v. Schultz, a 1988 decision. And what you see in there is that- Are you saying then that you win either way, whether it's owned by the city or it's owned by the university? I believe the record supports actually both of those conclusions. Yes, Your Honor, I do believe that's the case. But if it is owned by the city, and more particularly if it's a city right-of-way, then it really is automatic. Because case after case, in fact, there is no precedent against that. None. And if it is a city right-of-way, then it can be found to be anything other than a I thought we held in the previous appeal that ownership wasn't determined. I believe you held that in the context of if you're looking at a government proprietor, or you're looking at private property, then ownership is not necessarily determined, although it's certainly a factor. And so then what you're looking at is because it's all in the context of trying to assure proper notice to citizens as far as their ability to exercise their First Amendment rights. And so you do have cases. You have cases like McGlone v. Bell, 2012 decision that involved actually university property, but it appeared to be city property. So the court held that in that case, it's a traditional public forum. You had a case recently, Brindley v. City of Memphis, where it's actually privately owned. It's a privately owned cove. And yet the court held it's still a traditional public forum because it appeared and functioned like a traditional public forum. So our previous holding in the previous appeal, which I understood to be part of the law of the case, to the extent that the evidence is not what I'm saying or what the case is, I don't think you're following my question. Okay, let me tell them the previous decision that ownership was not determined in the context of government proprietor property. Yes. Okay. In the context of city owned property, there is no case supporting that, that I'm aware of, Your Honor, you're distinguishing between government owned and I thought cities were government. They are. But of course, if like in Coquinda, which was owned by a post office, it wasn't enough that it was government owned. It also had to be property that appeared to function like traditional public forum. In McGloin v. Bell, Sixth Circuit, 2012 case, it also had to do that. So it's all perspective. Essentially, this is and maybe I can cut to the chase this way, Judge Carnes, is really it's a traditional public forum, if this court finds one of two things. One is, is that it's a traditional public forum, because it falls within the traditional categories of either a city sidewalk, a city park or city street. That's, that's option A. Option B would be if it's not, then does it look and function like a traditional public forum, even though it is owned by the university. So under either route, it is a traditional public forum. And what the record actually has changed substantially since the remand, in addition to the maps I've already mentioned, there's also property documents which reveal conclusively that the city actually owns this property. It owns the property underneath it. That's what the something I was mentioning to Judge Rosenbaum is the license agreement, which further reflects the ownership and the control of the city. And then in addition to that, the remand gave us an opportunity to get a survey of the property, which is found on page 400 of the appendix. And what that shows is that again, this is a municipal right of way. And every case that has considered a municipal right of way. So essentially your argument depends on, or at least you think by far the strongest part of it is the city owns the property. Or I don't believe that it goes that far. I would say that if it's a traditional, if it's a city right of way, which actually at least can see that it is, they say that yeah, at least an easement there, that yes, that does mean it's a traditional public forum. Do you have any other arguments you'd like to make to us? Certainly. Also, the appearance and the addition surrounding the area indicate that it's a traditional public forum. Because if you take a look as you're going in, within the same block, there is probably on property. Again, this is shown on page 191 of the appendix. Within the PNC Bank, you also have a Baptist ministry property, and you also have Episcopal Church. And it's shown on this campus map on page 191. These are all private properties. And so, in addition to being traditional public forum, it appears it functions like the traditional public forum it is. And also as we stated in the brief, that even if it's found to be a limited public forum, that there are several aspects of this permit policy that would still be unconstitutional. Namely, it's restriction on leafletting. Also, the very vague determination of how a permit is required in the first place, whether it be casual, recreational, or social. And then third, the provision for a 10 working day requirement. And so, all these requirements are unconstitutional, even if this court finds it to be a limited public forum. Didn't your client testify that he would be able to comply with a one-week notice requirement that that would not pose any difficulties for him? No, I don't believe that was his testimony. And he stated on site that it's difficult, and he stated his affidavit is difficult. I believe also in his deposition, because he doesn't really plan that way. It's difficult for him to do that. He doesn't know when he's going to be a particular area at a particular time. I see that my time's up, and so I'll be glad to address any further questions on rebuttal. Thank you. Mr. Kellogg, we'll hear from Mr. Esau. May it please the court. Mr. Keister, as Judge Carnes noted, has presented no evidence that supports changing this court's previous conclusion that this particular sidewalk in front of Russell Hall in the heart of the University of Alabama campus is a limited public forum. He said that he has because the newly, quote, discovered, end of quote, maps show the boundary of the university campus. How do you respond to that? I'll respond to it in a couple ways, Your Honor. First, that is not the test that this court set out in LaDorne. What the court said, as you look to the traditional use of the sidewalk, the university's intent and policy, the sidewalk in the presence. Second, I would note that he conceded twice, both to the district court and this court, the last time we were up, that the ownership of the property does not matter. Third, I would say he's factually wrong. What he's focused in on is a deed and an easement from 75 and 77 years ago that was an easement to allow the expansion of what used to be a county highway, what is now University Boulevard, that was used for that purpose. The city then granted the deed property back. It had been used to build a hospital back in the 20s. So that deed came back with everything. Counsel, I'm sorry to have to, because of how we're deciding this, we need to look at the evidence in the light most favorable to the non-moving party for which it's a plaintiff. So let's just assume for purposes of our analysis that there's evidence that the city owns the sidewalks. And if you could conduct your analysis with that in mind. Absolutely. The analysis would be the exact same as it was the last time this case was up, as well as what it was in Bladorn. You'd look to the traditional use of that sidewalk. There's no evidence that this sidewalk has been used for any other purpose than as part of the University of Alabama campus. Second, you'd look to the university's intent and policy for this sidewalk. There's no evidence that it's been used for anything and the policy has been that it's a limited public forum that's preserved for the evidence of that. And third, there are no special characteristics of the sidewalk. Mr. Kellum mentioned the bank, the Baptist Student Center. Those were present and those were part of the evidentiary record that was before this court the last time when the court concluded that it was a limited public forum. None of that evidence has changed. He's submitted no evidence to change the court's prior opinion or the court's holding in Bladorn. I would also note that it would be contrary to the U.S. Supreme Court's holding in Greer v. Spock and also U.S. v. Kokinda, which Bladorn relied on very heavily. In the Greer case, you were dealing with Fort Dix, the same exact issue. You had a public road and public sidewalks transversing Fort Dix and the Supreme Court said that does not convert that into a traditional public forum. The Kokinda case, the exact same. You had a sidewalk leading up to a post office and the court said you don't look just at the objective characteristics, you look at the intent that the government was using that sidewalk. The intent there was for people to go to the post office and there was a specific post office policy for what that could be used for and that was why in both Greer and in Kokinda, the court found that it was a limited public forum. The same is exactly true here and as to Mr. Kellum's argument. Let me ask you a question. Is the fact that the university maintains these sidewalks give us any indication as to intent? Does it reflect in any way on intent? Absolutely. It is absolutely undisputed that the university built, maintains, controls, has police power over these sidewalks. That part is undisputed in the record. Mr. Kellum has conceded that numerous times and there's no contrary fact to that. That's what you would look to. The idea that you would go to 75-year-old to then decide what the fora would be is contrary to Bladorn, it's contrary to Greer, and it's contrary to Kokinda. I'd also would respond to his argument that the policy is somehow vague because you're not required to get a permit if you're engaging in casual recreational or social activities. As the district court correctly concluded, those are not vague and general breach of the peace ordinances, but it's a speech policy written specifically for the school context where the prohibited disturbances are easily measured by their impact and the normal activities of the school. And as the Supreme Court said ingrained, it will always be true that the federal legal imagination can come up with a hypothetical case to raise a question about that. That's not the standard. The standard is whether or not it is void for vagueness and here it's clearly not. The terms casual recreational or casual social activities are plain to a person of ordinary intelligence. He also made the argument earlier that it was overbroad because it's a complete ban on leafletting. That is not true. Under the current policy, students, faculty, staff may engage in leafletting without any advance notice and all Mr. Kellum, I mean, Mr. Keister has to do is have any student, any faculty member or any staff member sponsor him to engage in that activity. What is the purpose of the sponsorship requirement? Well, the purpose of the sponsorship requirement is the purpose of the entire policy to preserve the educational character of this space. Just like the court held in Whitmer, the Supreme Court held in Whitmer and as this court held in Bledorn, this is an enclave that is devoted to higher education. It is a space that is preserved for the education of the students. Everything that this policy does and it's set out in the policy is to preserve that character and prioritize based on the need to educate the students. Under the new policy, the students have the ability to obtain immediate access to certain spaces if they want to engage in speech that's for spontaneous activity. They can obtain access to any space on campus within 24 hours notice based on spontaneous activity. If it's not spontaneous activity, they can engage in leafletting without any advance notice and for all other spaces, they need to do it within five days, not 10. The new policy is clear that it must be done in five days. Now, they are encouraged to do it 10 days before because that helps the university in terms of scheduling. So if it's not, you know, an issue that is spontaneous or something like that, they can plan better, but the new policy is absolutely crystal clear that the requirement is five days. That is far more than was allowed in Bledorn. You'll remember in Bledorn, with the exception of one space on campus that was designated a free speech area where outside speakers become once a month for an hour and a half, the rest of campus, the entirety of the sidewalks, the rotunda, the rest of campus was closed to outside speakers and this court found that that was reasonable. Here, the campus is available to outside speakers. All they need to do is find a single student, a single faculty member, or a single staff person to sponsor them. The enrollment of universities still hovering around 40,000? Yes, your honor, and then you add faculty and staff and you have thousands more. And the record is clear that Mr. Keister, not once, has tried to seek a license. In fact, what he said was he would never seek a license. He would never seek a permit to come on campus because it was his God-given right to preach whenever and wherever God believes him. We said if you could give him a permit immediately upon request, he still would not do it because he thinks that's unreasonable, but the case law is clear and it's certainly clear in light of Bledorn that that is not unreasonable. Based on all of these issues, it is clear that we are in the exact same position we were before, except we have stronger evidence now that this is a limited public forum, that the ground use permit is reasonable, and therefore the district court's opinion should be affirmed. Thank you. Thank you, Mr. Rizzo. And Mr. Kellum, you have reserved some time for rebuttal. Thank you, your honor. If I could, I'd like to go through the Bledorn analysis just briefly. Before we do that, and that sort of stood out to me in his brief too, what about your client saying it doesn't matter what the permitting requirement is, I'm not going to get one? Well, he didn't say that. What he says, he objects to the permit requirement. There's no question about that, your honor. But what he was saying he would not do was when councils had some hypothetical one-time permit where he would still have to get the sponsorship from a willing student group. And so he said he objected to that. No, no, no, no, no, no. Don't play with the question. I thought they said in the brief that he said he would never do that. I'm not aware of any testimony supporting that, your honor, as far as him never doing it. What he said was he objects to it, and he does. He does object to the very idea of having to get a permit on a public right-of-way. He also objects to various aspects of the permitting process, and so in which the court recognizes that he doesn't have to subject himself to criminal sanction in order to challenge all these things. As far as the Bledorn analysis, I think it's important, it's a question raised by Judge in fact, it's important to note and emphasize that police do not disagree with this. They agree it is a municipal right-of-way. And so then what is the analysis then with Bledorn? When you take a look at what the government intention is and what's its use, well, opposing counsel suggests, well, you still go back to the university, but you do not. And the reason is, is because this is a city, this is a municipal right-of-way. So what is the city's that really stands out here? And that is the license agreement between the city of Tuscaloosa and the university. And what it says is that they retain full police and municipal power, particularly for pedestrian access. So that reveals the government intention there. And the government intention is, is to allow citizens to be able to use this sidewalk from one end of Tuscaloosa to the other. Counsel, let me ask you a question about the sponsorship. You said that that imposes an undue burden. And my question to you about that is what evidence is there in the record of that? Because the evidence that I'm familiar with says that there's not really anything that shows that somebody has not been able to get one considering how many students, faculty members and staff are on. Have I missed something in the is an undue burden and that somebody would not be able to obtain sponsorship? Well, somebody might be able to, I think where the difficulty comes is with Mr. Keister, and he explained his difficulty with it. He doesn't know anybody who would sponsor him. He doesn't know any of the students at the University of Alabama. He doesn't know any of the student groups. He didn't try. I mean, isn't that right? He didn't try. That is correct. He did not try. Well, how can you say that he doesn't know if it'll work? How can you say it's not going to he didn't know who to contact or who would? A lot of people don't know who to contact either, but it's not any kind of a problem for them. Well, we don't know that. That's not in the record that it hasn't been a problem. All we do know is that it was a problem for Mr. Keister. So is it your position that every single person who's ever obtained a permit to speak at the university had some connection, some pre-existing connection for the university community? Your Honor, I don't know if every single person had, but that would certainly be a logical conclusion that they would have to know somebody to contact, that they would have to have somebody who would agree with what they have to say. And that's a huge part of the problem that is part of this revised version of it, Judge Rosenblum, is not only must he find a sponsor who is willing to sponsor his speech, but also actively participate in his speech. Due to doctrinal differences, the ability of him to get a Christian group on campus to be able to do that is virtually impossible. At the University of Alabama? Yes, yes. He's with a denomination that is different from any other denominations represented on the campus. You're aware that individuals and entities within the university sponsor those whose speech they don't necessarily agree with, aren't you? No one has stepped forward to do that for Mr. Keeser, Your Honor. He hasn't, right? As far as contacting people he doesn't know, no, he has not. So we have 40,000 heathens at the university. Is that your position, Mr. Keeser? I'm sorry, what's that? No, Your Honor, I don't think so. I said the issue of having to actively join in a speech, it has to be every single thing he says. So they may agree with some of what he says, but not all of what he says. Somebody may simply think that everybody ought to be able to state their beliefs, regardless of what those beliefs are. That was not a radical notion back in the 1970s. It may be now. No, I think that's an obstacle. I do think it is, Judge Carnes, but I think what's particularly important here with the revised version is they have to actively say it themselves. So it's one thing to say, yeah, I believe in free speech, so you can say whatever you want, Mr. Keeser. But it's quite another to say, I have to join in it. So that's a whole other matter. But you don't have to join in what he's saying. You just say, I sponsor your right to say it. No, actually, if you take a look at the new revised version, that's exactly what it says, actively participate. So it does require that very thing, Your Honor. If you take a look at what's provided with the suggested motion on page two, it says, a university affiliate that reserves campus space must actively participate in any activity associated with that reservation. So that is something that compels the speech of the student or the student group or the university administrator, which is something I've never seen in any policy anywhere. And I think it's quite an extraordinary requirement. It's unconstitutional. Mr. Kellam, there was a suggestion of lutenist by Bell in this case. You forgot to mention in your argument that my dissent in Flanagan Enterprises versus the city of Sandy Springs was validated by the Supreme Court and produced nominal damages can defeat lutenist now if your claim addresses a past injury. That's exactly right, Your Honor. So now the left circuit is in line with the other circuits I'm sorry, I couldn't resist asking that question. Thank you. All right. Well, thank you, Mr. Kellam and Mr. Ezell. The case was well-argued and that completes our docket for this week and this court is adjourned. Thank you.